And good luck to you. May it please the Court, Brad Daniels on behalf of Plaintiff Appellant, the Hospital Association of Oregon, and I'd like to reserve six minutes for rebuttal. Very well. And I'd like to focus on two principal points. First, the statute at issue here effectively says that it shall be unlawful and punishable by civil penalties for a health care entity to engage in a transaction that does not satisfy the Oregon Health Authority. The unique and fundamental flaw in this statute is that it conspicuously avoids setting a comprehensible normative standard against which the party's conduct and the agency's enforcement authority can be measured. And second, for that reason, and in this context, the administrative regulations and sub-regulatory guidance, though voluminous, do not cure this statute's fundamental unconstitutionality. Now we know from codes— So is it for vagueness or because of an improper delegation to the administrative agency to clarify what types of transactions are covered under the statute? It's both, Your Honor. Vagueness and delegation, contrary to what the district court viewed or assumed, are not mutually exclusive. And the vagueness doctrine— But it appears like, you know, to summarize things maybe more than that, you can cure sort of vagueness in a statute through rules, you know, through agency promulgated rules, whereas delegation, the whole point of it is that you're making the argument that you can't, that you can't have delegated this to the agency. So that's sort of where I see the difference between those two things. And so that, you know, what does that mean? You know, why can they not take into account the rules as having resolved the vagueness problem? Because the vagueness problem, what animates vagueness, is both fair notice and arbitrary enforcement. And if a statute essentially wholesale delegates to the enforcement agency the opportunity to set criteria, basically to say what the law is, then that is both an unconstitutional under state statute or state constitution delegation, but it's also a vagueness problem. For example, if a statute were to say it is unlawful to engage in conduct that the EPA deems unlawful, that is both a unconstitutional delegation, but it's also a vagueness problem. I'll do you one better. If I say, you know, don't do bad things, and then you say we are delegating to the agency for promulgating our bad things statute to set rules, to lay out what the bad things are, and they do a beautiful job. They make it super clear and like shockingly no vagueness at all as to what are the bad things you can't do. Well then it's no longer vague. I mean, it's clearly vague at the statutory level, but it's not right. So that seems like it's a delegation problem. The question is, are you able to delegate such a broadly, such a broad statute? But the vagueness problem can be addressed, it seems like, unless it can't. Why can the vagueness problem not be addressed aside from your delegation argument? Because, precisely for Your Honor's comment, that it's vagueness at the statutory level. If vagueness as a matter of due process applies at the statutory level, then whatever the agency rulebook is, whether it's 10 pages or 300 pages, it doesn't solve what the statute says, or in this case does not say, which is what is the standard of conduct that's prohibited and what is allowed. And that it seems to me, though, that your argument is an amalgamation of Supreme Court cases dealing with criminal vagueness. And those cases that have recognized that when we're talking about economic regulation, the vagueness analysis is more flexible. And we do permit, I think, more ambiguity in economic statutes. And here that ambiguity has been addressed through administrative agency regulations, guidance, the opportunity to meet with the regulators before the transaction, all the things, you know, all the resources that are available online. Doesn't that sort of cure the problem to some extent? Not from our perspective, Your Honor. And certainly we acknowledge the more flexible standard of review for economic regulation. That's not something we dispute. But the standard for vagueness that we think applies here is not that it's vague in the statute requiring someone to adhere to an imprecise but comprehensible normative standard, but that there is no standard identified at all. And that is the key flaw in this. In the statute or the regulations? At the statutory level. We think that vagueness, due process vagueness requires some quantum of specificity at the statutory level. The legislature cannot, under the Due Process Clause, pass the statute that I just described or that Judge Van Dyck opined about, which is you have to comply with the law and then the agency will tell you what the law is. Due process at a minimum fundamental level requires some ascertainable standard by which to measure the agency's enforcement power and to give the party notice. That's what I think. But doesn't the statute prescribe, I'll call them large hospital or healthcare entities that are basically the object of the legislature's concern? So there are, I think, three pivot points in the statute, and Your Honor identified the who, and that's probably the most precise, though we still have a vagueness argument on that score. But the problem I have with the vagueness argument, given the statutory intent here, is that the legislature is concerned with the lessening of healthcare coverage being provided to Oregonians, particularly those who are otherwise underserved by virtue of under insurance, no insurance at all, in rural areas where there's a critical shortage of healthcare workers. And so your corporation or the hospital association is basically composed of major entities that clearly are covered by the statute, and they're making a vagueness argument that really applies to somebody else besides them. Not with respect to two aspects of the statute, Your Honor. One is when the transaction that the hospitals will engage in is deemed a transaction under the statute. So that's the first part that is not answered by the fact that our association is made up of hospitals. And then what are the effects of that transaction? What does the statute specify that is prohibited or allowed in, say, the merger of two hospitals? And in that respect, the statute says nothing at all. The criteria for preliminary and comprehensive review are a wholesale delegation, and in fact this was the statutory intent, was a wholesale delegation to OHA to set the criteria for when a transaction would be prohibited and when it would be allowed. And that's, in fact, evidenced by the rules that the OHA promulgated as a result of this statute. They say, for example, that we can prohibit a transaction that is deemed contrary to law without any indication of what that law is, whether it has any relationship to healthcare. But there are administrative regulations that define covered transactions, are there not? There are, Your Honor. I mean, we're looking at things like whether there's a one-third reduction in the level of services or it takes more time to get to the nearest healthcare provider. And that's all addressed in the regulations. And to the extent that you're—believe me, counsel, I'm sympathetic to the crux of your claim here, which is a client comes to you as legal counsel and says, I'm contemplating doing this deal, you know, am I going to be covered by this statute or not? And your answer is, I don't know. I can't tell from the language of the statute. But then the regulations say, in that instance, go call the regulators. Set up a pre-conference meeting and talk about what you intend to do and ask them basically what they're going to do in light of what you're contemplating doing. Why isn't that all sufficient to address your constitutional challenge? Because when we go to the regulator and say, for example, they say, well, this is going to be a one-third increase in travel time, we have no way of determining. There's nothing in the statute that would even provide the broadest possible standard for us to say that is or is not consistent with what the legislature intended to prohibit here. And so if we were to challenge the agency's rule or challenge the agency's order, no one would be able to point to any language in the statute by which to measure what the agency is or is not determining is, in this case, a significant reduction in essential. But wouldn't they be able to point to the language of the regulations? They would be able to point to the language of the regulations or sub-regulatory guidance. But the whole point of the constitutional vagueness limitation is that the statute itself has to at least contain some comprehensible, ascertainable standard against which that is measured. Otherwise— But again, back to the criminal analogy, we don't normally provide any review mechanism before the police officer on the street decides whether or not to arrest someone for vagrancy, whatever that means. But here there's an entire regulatory scheme for how you get these kinds of questions answered. I agree with Your Honor as a practical matter. However, it's solely within the agency's discretion what that regulatory regime will look like. Today it might look like a one-third reduction. Today it might look like it's contrary to common law. Tomorrow it might be something else. But doesn't all that have to go through—I assume Oregon has some sort of an Administrative Procedure Act that specifies opportunity for notice and comment and all that sort of thing before these regulations have the force of law? That's right, Your Honor. And, you know, in an APA challenge, typically what you would do is challenge a rule and determine whether it's consistent with a statute, whether it's exact, inexact, or delegative. But here this underscores the vagueness problem because we point to, say, a rule that says you can't engage in a transaction that's contrary to law, and then we try to reference back to what standard in the statute determines whether the agency has acted consistent with legislative intent or not. But don't you have a remedy under the statute to file an action in an Oregon circuit court to get an adverse agency decision reviewed? I believe so, Your Honor. Has anybody prosecuted such an action? Not to my knowledge. And the OHA has done, what, maybe two dozen of these cases so far? I think we're up to about 50 reviews. And how many of the transactions have been disapproved out of the 50? I, so I don't know the answer to that. Nobody's filed an action in circuit court challenging the denials? Not to my knowledge. And nobody's challenged the restrictions that the agency has placed on a transaction that was ultimately approved? No, what has happened is parties have abandoned the transaction. They're just walking away. Which is what happened with the OHSU legacy transaction as well as others. Because, again, if, let's say somebody does file that action, what does the court do with respect to evaluating the legality of the agency action? Is the court able to point to something in the statute that says the agency needs to approve a transaction that is not harmful to public health? The agency needs to approve a transaction that is not reasonably anti-competitive or any other standard like that. Nothing in the statute states, even on broad terms, what that standard would be. And so we're left in a wholesale delegation to the agency to determine, as the enforcement authority, what is or is not prohibited by the law. And that is not just a delegation problem. It's also a vagueness problem. I'll reserve the rest of my time. Very well. Good morning. May it please the court, Jordan Silk, Oregon Department of Justice, here on behalf of the State of Oregon. District Court properly rejected plaintiff's vagueness challenge to HB 2362, which occupies a plainly legitimate sweep providing oversight authority to ensure that health care mergers do not undermine equitable access to health care for Oregonians. I wanted to begin by pointing out, so last night, preparing for this, I found a case, I emailed counsel about it, and I plan to file a 20HA letter. Thank you. But it's called Cashem v. Barr, 941 F3rd 358, a 2019 case that basically deals with this the confusion in the standard there, and basically says the specific holding there is to reaffirm that there is no third party standing for vagueness claims. So in Cashem, this court held that it is still the case that if conduct is clearly, if the party challenging a law is clearly subject to it, they have to bring an as-applied challenge. And I think more broadly, it also expressly distinguishes the Henry v. Spearman case that my opponent relied on in the reply brief, noting that in that case, the court said it was a habeas corpus action where the court had to decide the plausibility of the allegations. And so what Cashem says about Henry is, you know, that was, you know, there is this confusion in the case law. It hasn't been neatly sorted out. So that's enough under this plausibility standard. And also, it was a criminal case. And obviously, there's this broad distinction there between. Let me ask you the same question I asked your opposing counsel. Are there any matters pending before the Oregon courts challenging the administrative agencies? I'm not aware of any. This is the first case that has come before a court challenging the constitutionality of the statute. And it is. I mean, it's essentially hot off the, in the appellate court world timelines. But have there been 50 transactions that have been presented to OHA for its review? I don't know the specific number as I stand here, but counsel's numbers sounded similar to what I've heard at various points. And the majority of the transactions have ultimately been approved, as I understood the record. I don't know the answer to that as I stand here. The numbers I looked at indicated that there were only a handful, maybe five or ten, that had been drawn or disapproved. Right. And I generally find myself appearing in the state appellate courts most frequently. And it's kind of astonishing to hear arguments about ambiguities in statutes leading to constitutional violations. Because Oregon state law has a very robust apparatus where courts are constantly going through an analytical process to resolve legislative intent behind ambiguous statutes. That's what they do. And in this case, I would suggest as much, you know, the whole don't do bad things notion of a law being passed that says this agency is empowered to create rules saying don't do bad things. As much as the regulatory guidance in this case does supplement the statute, the statute here is not that kind of statute. I mean, the statute here clearly sets forth a standard directing OHA to oversee significant health care merger transactions in order to make sure that those transactions are not going to result in a reduction in services to Oregonians. Like that is an ascertainable legislative standard to give to an agency to then refine the policy through rulemaking. And as has been discussed, if there is an agency determination, a final order under Oregon's APA, that order is subject to judicial review in the Oregon Court of Appeals if it's after a contested case. And rules are separately challengeable through their own. So yeah, presumably you could challenge this under Oregon law and sort of, you know, even the whole APA is sort of a non-delegation type thing. So you put all that into one bucket. But what is the rule, the federal, I assume it would be constitutional rule, as far as limits on states' abilities to give very broad, very vague, for the legislature to basically give its power to some other body? Is there any federal limit to that? What is the plainly legitimate sweep test? And like the case law that's out there, I don't think it harmonizes everything as well as it could be, probably. But you have the rule from facial challenges talking about, you know, initially it was unconstitutional in all applications, and then there was, you know, a separate line of cases that says, well, it's more of a plainly, you know, plainly legitimate sweep. And then you have the distinction between criminal cases versus civil cases that's kind of these parallel tracks that have kind of rubbed up against each other but haven't been resolved. I think ultimately the federal vagueness standard under the separation of powers prong is this plainly legitimate sweep test. But takes into account any state regulations that have been passed to promulgate that rule also? Right. I mean, yeah, what I'm trying to, I guess I'm asking a slightly different question, which is how, it's really kind of a delegation question. I'm trying to think of this delegation reframed as a vagueness thing, but is there any limitation on how broad the statute can be where you don't look at the, you don't look at the rules that were passed? Because you can take, in theory, the most imaginable, broadest statute, my example I gave, and you can make it very ascertainable and not vague at the regulatory level. But I'm just trying to figure out, is there a federal, I'm not aware of a federal limitation if a state wants to conduct its business that way. I might not think it's a good way for a state to conduct its business. It would maybe be problematic under federal non-delegation doctrine if it was a federal. But I'm just trying to figure out if there's any sort of federal limitation for states being able to do something really broad at the statutory level and then pull it tighter at the...  I think the only limitation is the separation of powers component of the vagueness test that's been suggested, which says that it's basically arbitrary enforcement is that piece of it. But as I argue in the brief... But in theory, that could be addressed by a regulation that made clear that it wouldn't be arbitrary. And in the context in which those cases talk about arbitrary enforcement, I mean, a promulgated rule by an administrative agency is much more like a statute rather than the sort of ad hoc subjective arbitrary enforcement that the vagueness standard is concerned with. So it may be that there isn't, you know, if that's correct and the separation of powers component of the vagueness test doesn't actually reach like... Cause you'd have to ignore looking at... Rulemaking processes by agencies, then I don't know that there is a federal limitation. But I think what I haven't heard any response to is this broader notion that even if there is a federal limitation, the federal... Both of these notions, vagueness and null and delegation at the federal level are deriving from the same constitution. And what I hear my opponent saying is that the vagueness test, despite the fact that nobody's discovered this previously, imposes a substantially greater restriction on delegation of authority than the federal non-delegation standard, which only asks for an intelligible principle. I think probably the more correct answer is that to the extent that there is this separation of powers component to the vagueness analysis that comes into play here, it has to at least be sort of coterminous with the non-delegation standard because that's sort of embodies the notion of how far Congress can go, a legislative body can go, the legislative branch of any government can go in delegating authority to the executive branch. But again, here, HB 2362 absolutely sets out that intelligible principle, directing OHA to make sure that these transactions don't undermine equitable access to healthcare. Thank you. I think those are all the points I wanted to make. If the Court has any other questions, we'd ask this Court to affirm. Very well, thank you. Thank you. Starting with the Casham v. Barr case, we did cite that case in our reply brief. Both that case and the Holder case do repeat this notion that a party whose conduct is clearly prescribed cannot make a facial challenge. We view that as a merits-based determination, and in both Casham and Holder, the parties there brought an as-applied and a facial challenge. And really, I think the way I thought about that principle and the way I think it's been applied is that a party whose conduct is clearly prescribed has not made the showing that the statute is fundamentally vague, that the statute has no core or lacks a plainly legitimate sweep. That principle— Maybe I'm defining the class differently, but it seems to me that because your association represents the largest healthcare providers in the state, they are clearly what the legislature had in mind when they enacted the statute and provided the definition of to whom the statute was to be applied. Two points there, Your Honor. I think you're right that our association is made up of hospitals. There's 61 community hospitals of various sizes. And if Your Honors agree with that point, it would only be with respect to the to whom question. Nobody's argued that that principle precludes our facial challenge with respect to the to what or what is prohibited, those two other parts of the statute. The federal rule here is, as my colleague acknowledged, is that does the statute have a plainly legitimate sweep? Or in the word of Coates and Williams, is there not an unreasonable amount of indeterminacy regarding what the fact is or what the prohibition is? And the distinction that we make is between a broad standard, which must be articulated using words, we acknowledge that, reasonable or what have you, and the lack of a standard at all. And this statute, it falls into the latter category. It's not ambiguous what the legislature was doing here. The legislature was saying, we are concerned about transactions in a variety of different contexts. We're going to delegate or we're going to assign the responsibility to the agency to define when those transactions will be allowed and when they'll be prohibited. And also, what conditions will be imposed on those transactions. And that's- The problem with the argument, though, is that the type of transaction is limited only by the vagrant, I'm struggling for a word here, but the ingenuity of the people who are structuring the transactions. I'm not sure how a legislature would be able to anticipate every single kind of potential transaction. I mean, it may be acquiring a medical practice of a group of specialists like orthopedic doctors, in which case there may be a cessation of availability of orthopedic physicians in a particular area because they've been absorbed by one of the bigger healthcare organizations. I mean, those are the kinds of things that it would be difficult for the legislature to predict, would it not? I think that, yes, but if the legislature is faced with a problem that's highly complex, like it was perceived in this circumstance, the answer is to set a standard that's broad and flexible, but is still a standard. And what other legislatures have done is you have to provide a notice and then these transactions are reviewable under antitrust principles or under a principle that is, in fact, referenced in this statute, that it would cause harm to a definable group of people or be unreasonably Well, but doesn't the Enabling Act, I haven't read the entire act, but doesn't the Enabling Act address the legislative concern over the fact that fewer and fewer Oregonians are able to obtain access to quality healthcare services that they can afford? That certainly is the defined problem that the legislature was looking at. The question is, now, how did the legislature choose to address that problem? It could choose to address it By telling the individuals who were engaging in transactions that result in a cessation or lessing of services, you've got to tell us in advance of what deal you're proposing to do, and then we're going to examine it to determine what the impact is going to be on our citizenry. And if I may, Your Honor, and the impact is only going to be whatever the agency tells you it is. So even if you provide that notice, even if you're able to navigate the who and the transaction and you provide that notice to the agency, then in terms of structuring your conduct, what is allowed and what is prohibited, and nothing in the statute would tell the parties that. Thank you. All right. Thank you, counsel. Thanks to both of you for your briefing and argument in this case. This matter is submitted, and we will be back tomorrow at 830 a.m. Thank you. All rise.
judges: TALLMAN, OWENS, VANDYKE